UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEORGETTE R. TORRES,

          Plaintiff,

                   Case # 17-CV-375-FPG

v.

                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

  Georgette R. Torres brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

  Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, Plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

  On November 5, 2010, Torres protectively applied for DIB and SSI with the Social Security Administration ("SSA"). Tr.[1] 261-73. She alleged disability since September 3, 2010, due to pain and swelling in her right leg. Tr. 301. On August 28, 2012, Torres appeared and testified at a hearing before Administrative Law Judge ("ALJ") Timothy J. Trost. Tr. 31-68. On February

---

[1] References to "Tr." are to the administrative record in this matter.

1, 2013, ALJ Trost issued a decision finding that Torres was not disabled within the meaning of the Act. Tr. 124-47. On March 25, 2015, the Appeals Council remanded the case. Tr. 148-52.

On October 7, 2015, Torres and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Eric L. Glazer ("the ALJ"). Tr. 69-115. On November 23, 2015, the ALJ issued a decision finding that Torres was not disabled within the meaning of the Act. Tr. 9-30. On April 24, 2017, the Appeals Council denied Torres's request for review. Tr. 1-6. Thereafter, Torres commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Torres's claim for benefits under the process described above. At step one, the ALJ found that Torres had not engaged in substantial gainful activity since the alleged onset date. Tr. 14-15. At step two, the ALJ found that Torres has the following severe impairments: borderline intellectual functioning, obesity, degenerative joint disease in her right knee, and depressive disorder with anxiety. Tr. 15-16. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 16-18.

Next, the ALJ determined that Torres retains the RFC to perform sedentary work[2] with additional limitations. Tr. 18-21. Specifically, he found that Torres can push, pull, lift, and carry ten pounds occasionally and less than ten pounds frequently; can sit for six hours and stand and walk for two hours in an eight-hour workday; can occasionally operate controls with either foot, stoop, kneel, crouch, and crawl; can frequently climb ramps and stairs; cannot climb ladders or scaffolds or tolerate concentrated exposure to dust, odors, fumes, and other pulmonary irritants; and can tolerate moderate noise. Tr. 18. The ALJ also found that Torres can occasionally respond appropriately to coworkers and the public; that normal breaks will accommodate her off task time;

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

4

and that she will be absent from work once per month for two hours to accommodate mental health appointments. *Id.*

At step four, the ALJ determined that this RFC prevents Torres from performing her past relevant work. Tr. 21-22. At step five, the ALJ relied on the VE's testimony to determine that Torres can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 22-23. Specifically, the VE testified that Torres can work as a document preparer, appointment clerk, and system monitor. *Id.* Accordingly, the ALJ concluded that Torres was not "disabled" under the Act. Tr. 23.

## II. Analysis

Torres argues that remand is required because the ALJ violated the treating physician rule.[3] ECF No. 10-1 at 18-21. Specifically, Torres asserts that the ALJ did not provide good reasons for rejecting the opinion of her treating physician, Dr. Sanjay Gupta, M.D. *Id.*

### A. Treating Physician Rule

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of

---

[3] Torres advances additional arguments that she believes require reversal of the Commissioner's decision. ECF No. 10-1 at 21-27. The Court will not reach those arguments, however, because it disposes of this matter based on the ALJ's violation of the treating physician rule.

5

determination or decision for the weight we give [the claimant's] treating source's opinion."). In the mental health context, "the treating physician rule is particularly important," since "mental disabilities are difficult to diagnose without subjective, in-person examination." *Bates v. Colvin*, No. 15-CV-6416L, 2016 WL 6677191, at *2 (W.D.N.Y. Nov. 14, 2016) (quoting *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *18 (E.D.N.Y. Sept. 28, 2012)).

When a treating physician's opinion is not given controlling weight, the ALJ must consider the following factors in determining how much weight it should receive: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### B. Dr. Gupta's Opinions

From May through September 2015, Dr. Gupta saw Torres on a monthly basis. *See* Tr. 764-69. He diagnosed Torres with "[m]ood disorder NOS, generalized anxiety disorder, GERD, hearing impairment, [and] asthma." Tr. 768. He also opined that Torres "clear[ly] . . . has a mood disorder," but he would continue to assess Torres to determine if it was "truly a bipolar illness." Tr. 768. Over the next four evaluations, Dr. Gupta twice noted that Torres reported "doing better," Tr. 765, 767, and ultimately reported that she was "stable," Tr. 764.

In October of 2015, however, Dr. Gupta described Torres's diagnosis as "much more complex than previously thought"—he opined that she suffered from mood disorder, generalized anxiety disorder, and borderline intellectual functioning. Tr. 906. As a result, Dr. Gupta indicated

that Torres had "limited ability to stay focused on any one thing for more than a few minutes at a time." *Id.* Dr. Gupta noted that Torres had difficulty handling stressful situations and "appear[ed] confused much of the time." *Id.* He also noted that Torres "present[ed] with flight of ideas and tangential thinking," and he noted her reports of "significant pain due to osteoarthritis that interfere[d] with her ability to stay on task." *Id.* While he observed that Torres had "functioned relatively well" under his care, he also noted that she had experienced "very few stressors." *Id.*

Dr. Gupta determined that, at that time, Torres "could not mentally function in a work setting." *Id.* He further opined that, if Torres were ultimately employed, she would need an "occupation that would permit her to be off task for about 25%" of the time "to accommodate her from a mental standpoint." *Id.*

The ALJ afforded Dr. Gupta's assessment only "some weight" because, despite the treatment relationship and Dr. Gupta's specialty, his "treatment was limited to medication management, and he repeatedly noted the claimant's overall improvement with treatment." Tr. 21.

### C. Failure to Provide "Good Reasons"

The ALJ fails to explain how or why Dr. Gupta's earlier assessments of Torres would override his later assessment of her condition. In October 2015, Dr. Gupta opined that Torres could not work, and the exhibits to which the ALJ generally cites for observations of Torres's "improvement" are progress notes and treatment records from Mid-Erie Counseling that predate Dr. Gupta's ultimate assessment. *See* Tr. 703-89. Elsewhere in his decision, the ALJ states that the record reflects that Torres's "mental improvements improved and stabilized with medication and treatment." Tr. 19. But, once again, the exhibits to which the ALJ refers predated Dr. Gupta's October 2015 assessment. The ALJ does not adequately explain how any earlier improvements

would warrant discounting Dr. Gupta's later assessment, especially in light of the newly recognized complexity of Torres's diagnosis and the lack of stressors previously presented.

The Commissioner argues that "the ALJ reasonably found that Dr. Gupta's opinion was not consistent with his treatment notes." ECF No. 12-1, at 23. But the ALJ makes no such express finding, and the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted).

Moreover, a claimant's purported "improvement" does not necessarily override a treating physician's ultimate opinion, and the ALJ is still obligated to adequately explain his reasons for rejecting that opinion. *See Wilson v. Colvin*, No. 15-CV-6316, 2016 WL 5462838, at *12 (W.D.N.Y. Sept. 28, 2016) ("The ALJ also noted that, at some points, the record suggests that plaintiff's condition improved. Here, however, the fact that plaintiff showed some 'improvement' was not so compelling as to override the opinion of plaintiff's treating physicians."). When an ALJ analyzes a treating physician's report, she "cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (citations omitted).

The ALJ also discounted Dr. Gupta's opinion based on his understanding that Dr. Gupta's "treatment . . . was limited to medication management." Tr. 21. But the ALJ's decision notes that Torres's treatment at Mid-Erie Counseling also included psychotherapy, Tr. 15., and Torres's mental health counselor co-signed Dr. Gupta's assessment, Tr. 907. The ALJ provides no further explanation for his conclusion that the treatment informing Dr. Gupta's opinion was "limited to medication management."

Accordingly, for the reasons stated, the Court finds that the ALJ erred when he failed to give "good reasons" for discounting Dr. Gupta's treating opinion.

**D.      Remand for Calculation of Benefits**

Torres asserts that the Court should remand this matter solely for calculation and payment of benefits because Dr. Gupta's opinions establish that her limitations preclude full-time employment. ECF No. 10-1 at 25.

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when remand is unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008); *see also McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger*, 335 F.3d at 106.

Despite the treating relationship between Dr. Gupta and Torres, the Court cannot determine that Dr. Gupta's opinion is entitled to controlling weight. Although his October 2015 opinion cites

9

the newly discovered complexity of Torres's diagnosis and her prior lack of stressors, his progress notes from the immediately preceding months cite Torres's improvements and ultimate stabilization with medication. Tr. 764-69. The Court recognizes that "the treating physician rule is 'even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time.'" *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (quoting *Santiago v. Barnhart*, 331 F. Supp. 2d 620, 629 (S.D.N.Y. 2006)). But, in this case, the conditions described in the progress notes differ from those described in the opinion rendered shortly thereafter—for example, Dr. Gupta's September 2015 progress notes state that Torres was "stable" with an "[o]rganized thought process" and "intact" memory. Tr. 764. Therefore, the Court declines to afford controlling weight to his October 2015 opinion that Torres cannot work, because it does not appear "well supported," as the treating physician rule requires. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also id.* §§ 404.1527(c)(3), 416.927(c)(3) (noting that an ALJ will give more weight to a medical opinion that is supported by relevant evidence, like medical signs and laboratory findings, and is well explained).

Although it is unclear based on the record before the Court whether Dr. Gupta's opinion is entitled to controlling weight, and therefore establishes that Torres is disabled, Torres is still entitled to a proper analysis of Dr. Gupta's opinion and, if appropriate, "good reasons" why his opinion must be rejected. Accordingly, the Court remands this case for further administrative proceedings. On remand, the Court suggests that the ALJ contact Dr. Gupta to clarify his opinion or obtain additional information from him.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 25, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court